UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 05-195 (JR) |
| | : | |
| v. | : | |
| | : | |
| RALPH PRICE, | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing. For the reasons set forth herein, the government respectfully recommends that the Court, sentence the defendant to a period of incarceration at the low end of the Guidelines range of 60-71 months.

### I.   BACKGROUND

On April 10, 2006, the defendant, Ralph Price, pled guilty to one count of Unlawful Possession with Intent to Distribute 5 Grams or More of Cocaine Base, in violation of Title 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(B)(iii). As part of his plea, the defendant agreed that the following facts would have been established beyond a reasonable doubt had this case gone to trial:

On April 26, 2005, agents with the Federal Bureau of Investigation ("FBI") Safe Streets Gang Task Force executed a search warrant at the defendant's home, 3407 13th Place, S.E. #301, Washington, D.C. When the agents arrived at the defendant's home to execute the search warrant, they found the defendant and his girlfriend, Wilinda Barron, in a bedroom inside the apartment. In the same bedroom, the agents recovered two plastic baggies containing a white rock substance from inside a man's jacket, which was hanging on the closet door. Also in that bedroom, the agents recovered a small plastic baggie containing a white rock substance from

inside a pair of sweat pants in the room. In those sweat pants were a set of car keys which the defendant stated belonged to him. From under the mattress on which the defendant had been seen laying, the agents recovered a glass vial containing suspected Phencyclidine ("PCP"). Also found in the bedroom was mail matter and an ID in the name of the defendant and Wilinda Barron. Numerous photos of the defendant were found through-out the apartment.

The defendant was placed under arrest. He was read his <u>Miranda</u> rights, and waived them. The defendant provided the agents with a written statement in which he admitted that he lived in apartment #301 with his girlfriend and that the crack cocaine and the PCP were all possessed by him, and that his girlfriend had no knowledge of the drugs.

All of the suspected drugs were sent to the DEA Mid-Atlantic laboratory and were analyzed by a forensic chemist. The white rock substance recovered from the jacket was determined to be 14.5 grams of crack cocaine. The white rock substance recovered from the sweat pants was determined to be .38 grams of crack cocaine. The substance in the glass vial was determined to be 5.9 milliliters of PCP.

An expert witness would have testified at trial that the quantity and weight of the crack cocaine recovered from the bedroom is consistent with the quantity and weight of drugs that are intended to be distributed, rather than consumed for personal use.

The government's evidence at trial would also have demonstrated that found underneath the bedroom mattress on which the defendant was seen laying, next to a vial of PCP, was an operational Haskell Model JS .45 caliber handgun, loaded with six (6) rounds of .45 caliber ammunition. The defendant asserted in his post-arrest, post-rights statement that he was the owner of the handgun and that his girlfriend, Ms. Barron, had no knowledge of it. The

defendant has repudiated that portion of his statement regarding the handgun. The defendant now asserts that he did not possess the gun or the ammunition, and that the handgun and ammunition were Ms. Barron's.

## II. SENTENCING CALCULATION

### A. Statutory Minimum/Maximum

The minimum term of imprisonment for the charge of Unlawful Possession with Intent to Distribute 5 Grams or More of Cocaine Base, a Class b felony, in violation of Title 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(B)(iii), is 5 years. The maximum punishment is 40 years and/or a fine of $2 million, or both. PSR at ¶ 60.

### B. United States Sentencing Guidelines Calculation

The Presentence Report writer has calculated defendant's total offense level to be 25 and a criminal history category of I. Thus, the defendant's Guidelines range for violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(B)(iii) would be 57 to 71 months. PSR at ¶ 61. Given the 5-year statutory minimum, the applicable Guidelines range would be 60 to 71 months. PSR at ¶ 60. Because the applicable Guidelines range is in Zone D of the Sentencing Table, the defendant would not be eligible for probation. See USSG § 5B1.1, Comment n. 2, and USSG § 5C1.1(f).

### C. The Impact of Booker

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United

States Code, Section 3553(b)(1).  Booker, 543 U.S. at 258.  However, the Court expressly refused to invalidate the Guidelines in their entirety.  To the contrary, the Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime.  Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the Guidelines.  See 18 U.S.C. Section 3554(c)(2).  The sentence will then be subject to review by courts of appeals for "reasonableness."  Id. at 261.

In Booker's wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines.  See Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing).  "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."  Booker at 262 (citing 18 U.S.C. Sections 3553(a)(4)&(5) (Supp. 2004)).  In light of this mandate – and the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable per se.  Not only is a sentence within the Guideline range reasonable per se, but it also accommodates the goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

It thus remains true that, absent unusual circumstances, the sentence in a criminal case

should fall within the Guideline range as determined by this Court. Each Supreme Court Justice in the various opinions in Booker recognized the express national policy goals, as articulated by Congress, that sentences be uniform across the country, to the extent possible, and that sentences be based on the offender's actual conduct and history. See, e.g., id. at 253 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 250 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at 292 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 304-05 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.").

Since the Guidelines currently represent the only existing benchmark to encourage uniformity and thus the only tool to implement Congress' vision of sentencing uniformity and fairness, Guideline range sentences are currently the only mechanism available to implement Congress' basic statutory goals. This is so, said the court in United States v. Wilson, 350 F. Supp.2d 910 (D. Utah 2005) – the day after Booker was decided – because the Guidelines represent the product of an expert commission, that has studied the sentencing process at great length, under the specific mandate of Congress, to fashion recommended sentences that carry out the purposes defined by Congress. The resulting Guidelines, Wilson held, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to congressional preference.

Wilson further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness.  For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence.  In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." Id. at 950.  A non-Guidelines sentence would, in the ordinary or usual case, unreasonably thwart legislative intent – in particular, the overriding concern with uniformity and the prevention of unfair disparities for similarly-situated defendants.

In this case, as explained further in Section IV below, no unusual circumstances exist that warrant an exception to the preference for Guidelines sentencing in this case.

### III.  THE PRESENTENCE INVESTIGATION REPORT CORRECTLY CALCULATES THE DEFENDANT'S OFFENSE LEVEL

The defendant asserts that the Presentence Investigation Report erroneously calculates his offense level in that it includes a two point enhancement pursuant to Guidelines § 2D1.1(b)(1).  PSR at ¶ 21; PSR at p. 14.  Defendant is incorrect.  Pursuant to § 2D1.1 (b)(1), the defendant's base offense level should be increased by two levels because, as demonstrated in the plea proffer, "a dangerous weapon (including a firearm) was possessed" in this case.  See USSG § 2D1.1(b)(1).  Specifically, an operational Haskell Model JS .45 caliber handgun was found under the mattress where the defendant was found laying, and next to the bottle of PCP which the defendant admits was his.  Plea Proffer at ¶ IV.A.1 & 4; PSR at ¶¶ 9-14.

In anticipation of the Court hearing evidence on this issue prior to sentencing the defendant, the Government relates the following points of law to assist at the hearing.  As a

general matter, fact-findings in a sentencing context need be supported only by a preponderance of the evidence, see United States v. Burke, 888 F.2d 862, 869 (D.C. Cir.1989),[1] and the Court of Appeals "will 'uphold the district court's sentence so long as it results from a correct application of the guidelines to factual findings which are not clearly erroneous.' " United States v. Barry, 938 F.2d 1327, 1332 (D.C. Cir.1991) (quoting United States v. Young, 932 F.2d 1510, 1512 (D.C. Cir.1991)). Specifically, with respect to § 2D1.1(b)(1), a two-level increase to a defendant's base offense level is required under the Guidelines "if a dangerous weapon (including a firearm) was possessed in relation to the offensive conduct." USSG § 2D1.1(b)(1).[2] Importantly, "the weapon need not be used, but merely *'present, unless it is clearly improbable that the weapon was connected with the offense.'*" United States v. Mathias, 216 F.3d 18, 27 (D.C. Cir. 2000) (quoting Application Note 3 to § 2D1.1) (emphasis added); see also United States v. Burke, 888 F.2d 862, 869 (D.C. Cir.1989) (application of § 2D1.1(b)(1) does not "depend on [a] showing that the defendant used . . . or would have used the firearm to advance the commission of the underlying offense"); United States v. Harrison, 103 F.3d 986, 990 (D.C. Cir. 1997) (sustaining an enhancement where a firearm was in the trunk of a car used in the drug

---

[1] Nothing in Booker undermines the well-established principle that fact-finding in the sentencing context should be conducted under the preponderance of the evidence standard. See United States v. Edwards, – F. Supp. 2d –, 2006 WL 894974, * 9, n. 2 (D.D.C. Apr. 7, 2006) (JDB); see also United States v. Vaughn, 430 F.3d 518, 525 (2d Cir. 2005); United States v. Garcia, 413 F.3d 201, 220 n. 15 (2nd Cir. 2005); United States v. Fisher, 421 F. Supp.2d 785, 792 (D.Del. 2006).

[2] Possessing a weapon during relevant conduct also precludes application of the safety valve. See USSG § 5C1.2(2); United States v. Plunkett, 125 F.3d 873, 874-75 (D.C. Cir. 1997) (safety valve did not apply toi defendant who, although he had no weapon during single drug transaction that was basis of offense of conviction, admittedly possessed firearm during relevant conduct)

offense).

In the instant case, even assuming that the defendant's post-rights statement claiming ownership of the gun was false, the presence of an operational Haskell Model JS .45 caliber handgun under the mattress where the defendant was laying, in the same room as the crack cocaine that the defendant admits was his, and right next to the bottle of PCP that the defendant also admits was his, amply supports application of the two-point enhancement under USSG § 2D1.1(b)(1). Plea Proffer at ¶ IV.A.1 & 4; PSR at ¶¶ 9-14; see also United States v. Eastland, 989 F.2d 760, 770 (5th Cir.1993) (recognizing that a temporal and spatial relation between the weapon, drug activity, and the defendant establishes possession of a weapon under § 2D1.1(b)(1)); United States v. Hooten, 942 F.2d 878, 882 (5th Cir.1991) (noting that evidence of a weapon found in the same location of drugs generally comprises possession of a weapon under § 2D1.1(b)(1)). Moreover, courts have approved application of the firearms enhancement in situations far more benign than the one in this case. See, e.g., Mathis, 216 F.3d at 27 (holding that a gun inside the glove compartment of a car that a co-conspirator drove from the scene sufficient to uphold a § 2D1.1(b)(1) enhancement); United States v. Torres, 901 F.2d 205 (2d Cir.1990) (search of apartment leased to female defendant and shared with male occupant revealed a handgun under queen-sized mattress); United States v. Hewin, 877 F.2d 3 (5th Cir.1989) ("dinky little gun" in a box in the back seat of a co-defendant's car in which the defendant was arrested while transporting drugs); United States v. Otero, 868 F.2d 1412 (5th Cir.1989) (handgun and rounds of ammunition found in defendant's van parked outside the site of drug sale and arrest); United States v. Restrepo, 884 F.2d 1294 (9th Cir.1989) (pistol discovered between mattress and box springs of the defendant's bed following his arrest in

another part of the house).  As a result, the Court should apply the two-point sentence enhancement pursuant to § 2D1.1(b)(1) in this case.

### IV. DEFENDANT SHOULD BE SENTENCED AT THE LOW END OF THE GUIDELINES RANGE OF 60-71 MONTHS

The Government recommends that the Court sentence the defendant within the Guidelines range of 60-71 months.  Such a sentence would not only be presumptively reasonable, for the reasons outlined in section II.C. above, but would also be justified by consideration of the sentencing factors enumerated in 18 U.S.C. § 3553.  Those factors fall into three main categories: the nature of the offense, the needs of the public, and the history and characteristics of the defendant.  United States v. Ranum, 353 F. Supp.2d 984, 989 (E.D. Wis. 2005).

The defendant's illegal conduct represents a real and present danger to the community.  In this case, the defendant possessed not only a drug dealer's quantity of crack cocaine, but also a loaded Haskell Model JS .45 caliber handgun.  Considering that drugs and drug-related gun violence are the source of the vast majority of crimes in this City and of violence against its citizens, the defendant's conduct here is reprehensible.  It is vital that the Court send a message to both the defendant and the community that drug dealing, and the possession of guns by drug dealers, will not be tolerated.

It should also be noted that the defendant has already received a substantial benefit for his early acceptance of responsibility.  Specifically, the defendant received a three point decrease in his offense level under the Guidelines.  Had the defendant not received this benefit, his Guidelines range would have been 78-97 months rather than 60-71 months.  Accordingly, the defendant has already received all the leniency he should under the plea.  Sentencing the

defendant at the lower end of the Guidelines range, consistent with the statutory 5 year minimum, would serve the interests of the community and give both the government and the defendant the benefit of the bargain negotiated.

## V.   CONCLUSION

The defendant should be sentenced at the low end of the Guidelines range of 60-71 months.

Respectfully,

KENNETH L. WAINSTEIN
United States Attorney
Bar No. 451058

_____/s/_____
G. Michael Harvey
Assistant United States Attorney
Federal Major Crimes Section
555 4th Street, N.W.  #4243
Washington, DC 20001
Phone: 305-2195; Fax: 616-3782
D.C.  Bar No. 447465

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon the attorney for the defendant, John Jeffress, Esquire, this 21st day of June, 2006.

_____/s/_____
G. Michael Harvey
Assistant United States Attorney