# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** : | | **Case No. 05-195 (JR)** |
| : | | |
| : | | |
| **v.** : | | |
| : | | |
| : | | |
| **RALPH PRICE** : | | |
| _____: | | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S PRO SE MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE, PURSUANT TO 28 U.S.C. SECTION 2255

The United States, through its attorney, the United States Attorney for the District of Columbia, hereby opposes defendant's pro se Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. Section 2255. In his motion, defendant argues that he received ineffective assistance of counsel from Jonathan Jeffress, Esq., ("plea counsel") for the following reasons: 1) plea counsel violated defendant's Constitutional rights by negotiating a plea agreement on defendant's behalf with the government; 2) plea counsel violated defendant's due process rights by not challenging the Grand Jury process, the indictment, and the application of the sentencing guidelines in this case; 3) plea counsel coerced defendant into entering a plea of guilty to possession with intent to distribute crack cocaine, even though the government did not have sufficient evidence to prove that defendant had the requisite intent to distribute the drugs to another person; and 4) plea counsel failed to challenge the PWID Cocaine charge pursuant to United States v. Brisbane, 367 F.3d 910 (D.C. Cir. 2004). Defendant also alleges that this Court misapplied the sentencing guidelines in this case, which violated defendant's rights under the Double Jeopardy clause of the U.S. Constitution. Based on the following reasons, defendant's

motion should be summarily denied.

## FACTUAL AND PROCEDURAL HISTORY

Factual Background

On April 26, 2005, agents with the Federal Bureau of Investigation's ("FBI") Safe Streets Task Force executed a search warrant at defendant's apartment at 3407 13th Place, S.E., Apt. 301, Washington, D.C.[1]  When the agents entered the apartment, they found defendant and his girlfriend, Wilinda Barron, in a bedroom within the apartment.  In that bedroom, the agents found two plastic bags containing a white, rock-like substance inside the pocket of a man's jacket, which was hanging on a closet door.  The agents also found recovered a small plastic bag that contained a white, rock-like substance from inside a pair of sweat pants in that room.  The agents also found a set of car keys in the pocket of the sweat pants, and defendant stated that those car keys belonged to him.  The agents also searched beneath the mattress upon which defendant was laying when they entered the bedroom, and discovered a glass vial that contained a substance suspected to be Phencyclidine ("PCP"), and a loaded, .45 caliber Haskell Model JS handgun. Mail matter, and a piece of identification bearing defendant's name also was found in the bedroom, and numerous photographs of defendant were found within the apartment.  Defendant was placed under arrest and advised of his Miranda rights.  After he waived his Miranda rights, defendant provided the agents with a written statement stating that he lived in the apartment with Ms. Barron, and that he possessed the drugs that were found within it without his girlfriend's

---

[1]    The factual proffer that the government is referring to in its opposition is the same factual proffer that the government submitted to the Court at the plea hearing in this case.  That proffer, along with the other plea-related materials, was docketed as Item 25 on the docket in this case.

knowledge.  Defendant also stated to the FBI that the handgun and ammunition belonged to him, and that his girlfriend did know anything about them.  However, he later repudiated that portion of his statement.

The suspected narcotics that were seized were later tested by the Drug Enforcement Administration ("DEA") and found to be approximately 14.88 grams of crack cocaine and 5.9 milliliters of PCP.

Procedural Background

On May 24, 2005, a federal grand jury returned a three-count indictment charging defendant with the following offenses, which occurred on April 10, 2005: 1) Unlawful Possession With Intent to Distribute 5 Grams or More of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii) (Count One); 2) Unlawful Possession With Intent to Distribute Phencyclidine, in violation of 21 U.S.C. §§ 841 (a)(1) and (b)(1)(C) (Count Two); and 3) Using, Carrying and Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1) (Count Three).

On April 10, 2006, defendant, who was represented by plea counsel, appeared before this Court in order to enter a plea of guilty to Count One of the indictment, pursuant to a written plea agreement.  Pursuant to the written plea agreement, defendant accepted responsibility for possessing approximately 14.88 grams of crack cocaine for the purposes of distribution.  See Plea Agreement, ¶ 2.[2]  The government agreed to a three-level decrease to defendant's base offense level due to his acceptance of responsibility, and it also agreed not to oppose defendant's request for a sentence at the low end of the applicable guideline range in this case.  Id. at ¶¶ 10,

---

[2]    The written plea agreement has been entered on the docket in this case as Item 24.

12.   The government also agreed to dismiss the remaining counts of the indictment at the time of sentencing, and both parties agreed that the issue of whether defendant possessed the gun that was recovered at the time of his arrest would be decided by the Court at the time of sentencing. Id. at ¶¶ 3, 13.

On June 28, 2006, the parties appeared before the Court for sentencing and argued their respective points of view about whether defendant possessed the gun that was found under the mattress at the time the police executed a search warrant at his home on April 26, 2005. Although defendant initially planned on calling his girlfriend, Wilinda Barron, as a witness to testify that the gun belonged to her, defendant declined to present her as a witness.  See 06/28/06 Tr. at 2.[3]  Although the government was prepared to present the testimony of an officer, who was present when defendant was arrested, the government did not present this officer's testimony because the parties concluded that the officer's testimony would be consistent with what was contained in the police paperwork regarding defendant's proximity to the gun at the time of its discovery.  Id. at 7.   However, in lieu of Ms. Barron's testimony, defendant offered a written statement from Ms. Barron as evidence at the sentencing hearing.  Id.  The Court ultimately found, by a preponderance of the evidence, over plea counsel's objection, that defendant possessed the handgun that was found underneath his side of the mattress that he was laying on at the time the police executed the search warrant at his home on April 26, 2005.  Id. at 18-19. Consequently, the Court found that the defendant's base offense level pursuant to the sentencing guidelines would increase by two levels pursuant to USSG § 2D1.1(b)(1) ("gun bump").

-------

[3]  "06/28/06 Tr." is the 24-page transcript of the sentencing hearing that was held in this case on June 28, 2006.

Therefore, defendant, who had a base offense level of 25 and one criminal history point, was eligible to receive a sentence in the range of 57 to 71 months of incarceration.  Id. at 18.   The Court also found that defendant did not establish that he was entitled to receive relief pursuant to § 5C1.2 of the sentencing guidelines ("safety valve provision"), which would have caused him to receive a sentence that was below the 60-month mandatory-minimum sentence he was to receive pursuant to 21 U.S.C. § 841 (b)(1)(B)(iii).  Id. at 18-20.  Consequently, the Court sentenced defendant to 60 months of incarceration, to be followed by 48 months of supervised release.  Id. at 21.  Defendant also was ordered to pay a $100.00 fine.  Id.  Plea counsel noted an appeal on defendant's behalf on July 17, 2006; however defendant's motion to dismiss the appeal was later granted by the U.S. Court of Appeals for the D.C. Circuit on March 2, 2007.

On May 21, 2007, defendant filed the instant pro se motion.

## ARGUMENT

## I.    INTRODUCTION

Defendant moves to vacate his sentence in this case pursuant to 28 U.S.C. § 2255, by alleging that he received ineffective assistance of plea counsel, and that the Court misapplied the sentencing guidelines in this case.   Regarding plea counsel, defendant alleges that plea counsel performed deficiently in the following ways: 1) plea counsel violated defendant's Constitutional rights by negotiating a plea on his behalf; 2) plea counsel coerced him into entering a plea of guilty to possession with intent to distribute cocaine, even though the government never proved that he had the requisite intent to distribute the drugs to another person; 3) plea counsel failed to raise a Brisbane challenge to the PWID Cocaine charge; and 4) counsel did not challenge the Grand Jury process, the indictment, and the application of the sentencing guidelines in this case.

5

However, the record of the proceedings in this matter, clearly demonstrates that plea counsel zealously represented defendant prior to and during the plea proceeding, and it belies any suggestion that his representation fell outside the "wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. 668, 689 (1984).   Defendant also makes a vague and conclusory allegation that the Court misapplied the sentencing guidelines in this case; thus he claims that he is entitled to relief pursuant to Section 2255.  However, defendant's claims are belied by the record, and the law applicable to his case.  Accordingly, this motion should be summarily denied.

## II.    DEFENDANT FAILS TO DEMONSTRATE INEFFECTIVE ASSISTANCE OF COUNSEL

### A.    Legal Standard for Assessing Ineffective Assistance of Counsel

In order to prevail on a claim of ineffective assistance of counsel, a defendant must establish (1) that his counsel's performance was deficient, i.e., that his counsel "made errors so serious that [his] counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that counsel's "deficient performance prejudiced his defense." Strickland v. Washington, 466 U.S. 668, 687 (1984).  In order to establish that counsel's performance was deficient, the defendant must demonstrate that his "counsel's representation fell below an objective standard of reasonableness," i.e., "prevailing professional norms." Id. at 688, 690; accord Nix v. Whiteside, 475 U.S. 157, 165 (1986); United States v. Catlett, 97 F.3d 565, 570 (D.C.Cir. 1996); United States v. Bruce, 89 F.3d 886, 893 (D.C. Cir. 1996).  In evaluating counsel's performance, the court must be highly deferential and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is,

6

the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland v. Washington, supra, 466 U.S. at 689; United States v. Catlett, supra, 97 F.3d at 570; United States v. Holcomb, 943 F.Supp. 13, 17 (D.D.C. 1996). The court should also keep in mind that counsel's decisions often hinge on choices made – and information supplied – by the defendant and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." Strickland v. Washington, supra, 466 U.S. at 689 (citations omitted).

In order to establish that counsel's deficient performance prejudiced his defense, the defendant must demonstrate that the prejudice was so serious that it deprived him of a fair proceeding, i.e., that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 687, 693 - 694; United States v. Catlett, supra, 97 F.3d at 570; United States v. Bruce, supra, 89 F.3d at 893; United States v. Holcomb, supra, 943 F.Supp. at 17. To meet this standard in the plea context, "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

As with all claims of ineffective assistance of counsel, "failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Strickland, supra, 466 U.S. at 700; accord Hill v. Lockhart, supra, 474 U.S. at 60. This Court need not address both components if the defendant fails to make a sufficient showing on either one. Strickland, supra, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be

followed." <u>Id</u>.

       1.    <u>Plea Counsel Did Not Render Deficient Performance When He Negotiated a Plea Offer On Defendant's Behalf</u>

Plea counsel did not render deficient performance when he negotiated a plea offer on defendant's behalf in this case. In his affidavit, plea counsel states that when he met with defendant in order to discuss this case, defendant stated his interest in a plea offer, and that he wanted plea counsel to negotiate the best terms possible on his behalf. <u>See</u> Exhibit One (Affidavit of Jonathan Jeffress, Esq.). In order to assess the strengths of the government's case, plea counsel obtained discovery from the government, which included a drug analysis from the DEA. <u>Id</u>. at ¶¶ 3, 7. Plea counsel also reviewed information concerning defendant's criminal history, so that he could advise defendant on what type of sentence he was likely to receive from the Court if he were to proceed to trial and be found guilty by a jury, or if he entered a plea agreement with the government. <u>Id</u>. at ¶ 3. Plea counsel also shared these discovery materials with defendant. <u>Id</u>.

Initially, plea counsel negotiated a plea offer with the original prosecutor on the case, where the government had agreed to have defendant plead guilty to PWID Cocaine, to omit all references of the gun from the plea proffer, and to dismiss the gun and remaining drug charge at the time of sentencing. <u>Id</u>. at ¶ 4. When plea counsel conveyed the terms of this offer to defendant, defendant asked plea counsel to propose a counter-offer, whereby defendant would plead guilty to PWID PCP instead. <u>Id</u>. Pursuant to defendant's request, plea counsel made this counter-offer, and it was rejected by the newly-assigned prosecutor. <u>Id</u>. at ¶ 5. In response, the government made a counter-offer, which is contained in the written plea agreement that

defendant entered into on April 10, 2006. Id. When plea counsel discussed this modified plea offer with defendant, he advised defendant that, pursuant to the terms of this agreement, defendant would be facing a mandatory-minimum sentence of 60 months of imprisonment. Id. Plea counsel, who also advised defendant of his right to reject the government's plea offer, also advised defendant that he (defendant) would face the possibility of serving a minimum of 120 months of imprisonment or more if he went to trial and was found guilty of the offenses by a jury. Id. at ¶¶ 3, 8. Although defendant was hoping to serve less than 60 months in prison, he considered the terms of the modified plea offer and ultimately chose to accept it. Id. at ¶ 4. Counsel also states in his affidavit that it was defendant's decision to accept the government's plea offer, and he did not pressure him to accept it. Id. Plea counsel also states that had defendant chosen not to accept the government's plea offer, he would zealously represented defendant at a trial in this matter. Id. at ¶ 8. According to plea counsel, defendant did not, at any time, tell him that he did not want to accept the government's plea offer or that he wanted to go to trial. Id.

In order to provide defendant with an opportunity to avoid being subjected to a mandatory-minimum sentence, and to give defendant a better opportunity to participate in the 500-hour drug treatment program that is offered by the Federal Bureau of Prisons ("BOP"), counsel reserved the right to argue for the application of the "safety valve" provision of the sentencing guidelines, and to ask the Court to find that defendant did not possess the gun that was recovered at the time of his arrest. Id. at ¶ 5. When plea counsel discussed the modified plea offer with defendant, defendant had sufficient time to discuss its terms with plea counsel, to consider it, and to accept it. Id. at ¶ 8. In addition to plea counsel's statements, the record

shows that defendant agreed to these conditions, and he understood them prior to accepting the government's plea offer. During the plea proceeding, defendant stated that: 1) he and counsel discussed the terms of the plea offer and that he had sufficient time to consider it; 2) he understood the terms of the plea offer; 3) he and counsel discussed the fact that a mandatory-minimum sentence of 60 months would apply in this case; 4) he was aware that he had the option to reject the government's plea offer and have a trial in this case; 5) he was not promised anything other than the terms that were included in the plea agreement; 6) he was not pressured the accept the government's plea offer; 7) he was aware of his trial and appellate rights, and he was prepared to waive them by pleading guilty in this case; 8) that if defendant could avoid having the "gun bump" apply in his case, the Court could not guarantee that defendant would be able to participate in the BOP's 500-hour drug treatment program; and 9) he was satisfied with the services of plea counsel. 04/10/06 Tr. at 5-14. Since defendant's statements at the plea proceeding rebut the claims he is now making in his Section 2255 motion, the Court must consider those statements when deciding the merits of defendant's claim. See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) ("For the representations of defendant, his lawyer, and the prosecutor at [the original plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding. Solemn declarations in open court carry a strong presumption of verity"). Because the record rebuts defendant's claims of plea counsel's deficient performance regarding the negotiation of and defendant's acceptance of the government's plea offer, defendant has failed to show that counsel rendered deficient performance in this regard.

Even if this Court were to find that plea counsel rendered deficient performance in this

regard, defendant's claim would still fail because he has failed to show that there is a reasonable probability that he would not have accepted the government's plea offer but for counsel's alleged deficiencies.  First, the government's evidence in this case was very strong, because there was proof linking defendant to the location where the gun and drugs were found, and defendant gave a post-arrest, post-Miranda statement in which he accepted responsibility for the gun and drugs that were recovered at his apartment.  Two of the three offenses that defendant was charged with carried a mandatory-minimum sentence of 60 months of imprisonment; therefore, defendant was exposed to a minimum of 10 years of imprisonment had he gone to trial and been found guilty. The record shows that defendant obtained the benefit from accepting the government's plea offer because: 1) he was convicted of only one crime, rather than three offenses; and 2) he avoided receiving multiple convictions that carried a 60-month mandatory-minimum sentence, and thereby reduced his sentence by at least five years.  Due to the government's strong evidence, and the benefits that defendant has gotten as a result of the plea agreement that he had entered, defendant has not met his burden of showing that he would not have entered a plea of guilty but for counsel's alleged errors.  Consequently, his claim for relief in this regard should be summarily denied.

>    2.    Counsel Did Not Render Deficient Performance When He Did Not Raise a
>          Brisbane Challenge on Defendant's Behalf Prior to Defendant's
>          Acceptance of the Plea Offer

Defendant also alleges that counsel performed deficiently when he failed to raise a Brisbane challenge to the charge of PWID Cocaine prior to him entering his plea of guilty.  See Defendant's Motion at 8.  Specifically, defendant claims that the government would not have been able to prove that he possessed cocaine base, or crack cocaine, because there were other

11

items mixed in with the powdered cocaine. Id.  This claim should be summarily denied because it is not supported by the law of this jurisdiction regarding the government's ability to convict a defendant with this offense.

      a.      Legal Standard Concerning Proof of Cocaine Base

      The Court of Appeals has issued numerous opinions concerning the proof required before a defendant can be sentenced under the cocaine base provisions contained in 21 U.S.C. § 841.  First, the Court in Brisbane held that the government, when prosecuting cases involving cocaine base, must prove that the substance either is crack or that it is smokable.  367 F.3d at 914.[4]  Second, in United States v. Eli, 379 F.3d 1016, 1021 (D.C. Cir. 2004), the Court of Appeals upheld the trial court's determination that the defendant had distributed cocaine base, where the DEA's laboratory report and the Presentence Report (PSR) indicated that the drugs were "rock-like" and where a chemist testified that the drugs were smokable.  Third, in United States v. Washington, 115 F.3d 1008, 1010-11 (D.C. Cir. 1997), the Court of Appeals held that the district court did not commit plain error when it determined that the defendant had distributed cocaine base,  where both the Court and the defendant, at the plea hearing, referred to the drug as crack cocaine.  Furthermore, in a number of recent cases, the Court of Appeals upheld convictions based on facts similar to the case at hand.  See United States v. Johnson, 437 F.3d 69, 75 (D.C. Cir. 2006) (evidence were sufficient to support finding that the drugs that were found at defendant's home was crack cocaine where: 1) government offered testimony of a forensic chemist stating that the drug that was seized was cocaine base; 2) officers testified that

_____

     [4]  The Court concluded that it need not choose between these two options because, in that case, the government did not prove either that the substance distributed was crack or that it was smokable.  Id.

the drugs that were recovered were "rock" or "white rock"; and 3) officers found a cocaine cooking kit and other materials that are commonly used to produce crack cocaine); United States v. Lawrence, 471 F.3d 135, 139 (D.C. Cir. 2006) (government produced sufficient evidence to support defendant's conviction for PWID five grams or more of cocaine base, where officers testified that the substance was a "large white rock substance," and the sale of the drugs followed the conventional practices of selling crack cocaine); United States v. Powell, No. 05-3202, slip. op. at 2-3 (D.C. Cir., October 5, 2007) (evidence was sufficient to support defendant's conviction for PWID five grams or more of cocaine base, even though the government did not show that the "white-yellowish rock" material that was seized from defendant contained sodium bicarbonate or any other chemical compound that is needed to produce crack cocaine).  These cases collectively demonstrate that the government may prove that a defendant possessed cocaine base by proving that the defendant possessed crack, based on such evidence as a DEA-7 form or other evidence referring to the drugs as being "rock-like" substances or crack, or based on the defendant's admissions to possessing rock-like substances or crack.  The record in this case demonstrates that both types of proof were presented by the government prior to defendant's acceptance of the government's plea offer in this case.

b.      Application of the Legal Standard to This Case

The record in this case unequivocally shows that defendant did possess with intent to distribute cocaine base, because the record conclusively shows that defendant possessed crack cocaine with intent to distribute it.  Indeed, when the Court conducted his Rule 11 plea colloquy with defendant, both the Court and defendant referred to the drugs as crack, and defendant admitted to possessing almost 15 grams of a "white, rock-like substance."  04/10/06 Tr. at 14-15.

13

Defendant also admitted that he possessed this crack cocaine with the intent to distribute it to his cousin. Id. at 16-18.   Thus, the government's proffer and defendant's admissions on the record conclusively demonstrate that defendant possessed cocaine base with the intent to distribute it, and not some other form of cocaine. See Blackledge, supra, 431 U.S. at 73-74 (1977) (defendant's representations at a plea hearing, as well as any findings that were made by the judge accepting the plea, "'constitute a formidable barrier in any subsequent collateral proceeding' and the 'declarations in open court carry a strong presumption of verity.'"); Washington, supra, 115 F.3d at 1010-11 (no plain error in sentencing defendant for distributing cocaine base where court and defendant referred to drug as "crack" during the plea colloquy).

Furthermore, the DEA-7  and the information contained in the  Pre-sentence Report also indicates that defendant possessed almost 15 grams of crack cocaine at the time of his arrest. Therefore, there would not have been a basis for plea counsel to raise a Brisbane claim on defendant's behalf in this case.  Accordingly, plea counsel did not render deficient performance for failing to raise such a claim on defendant's behalf.  See United States v. Holland, 117 F.3d 589, 594 (D.C. Cir. 1997) (finding that counsel was not ineffective for failing to raise a meritless issue); Eli, supra, 379 F.3d at 1022 (counsel not ineffective where there was no reasonable probability that the result of the proceeding would have been different had counsel challenged the government's proof that defendant distributed "crack cocaine").  Therefore, given the evidence demonstrating that the substance that defendant possessed with the intent to distribute was crack cocaine, defendant has failed to show that counsel rendered deficient performance, or that he was

prejudiced by plea counsel's alleged deficiency. [5]

3.     Counsel Did Not Render Deficient Performance When He Did Not Challenge the Indictment and Application of the Sentencing Guidelines In This Case.

Defendant also alleges that plea counsel rendered deficient performance for his failure to challenge the indictment in this case, and the underlying Grand Jury process that supported the filing of the indictment. Defendant's Motion at 5. Furthermore, defendant alleges that counsel rendered deficient performance for failing to challenge the application of the sentencing guidelines in this case. Id. However, defendant's claims should be summarily denied because they are vague and conclusory and belied by the record, and because they are not supported by the applicable law in this case, and with the law regarding a judge's discretion in applying the

---

[5]   Defendant also alleges that there was no evidence to support a finding that he had the specific intent to distribute drugs to an "unknown third person" because a jury did not decide this issue. See Defendant's Motion at 5. This claim should be summarily denied because it is belied by the record. The indictment did not allege, nor does the law of this jurisdiction require, that defendant intend to transfer drugs to a specific person. See Red Book Criminal Jury Instruction 4.29. At the plea proceeding, defendant, having had an opportunity to consult with counsel, told the Court that although he had a crack habit, he planned on giving some of the crack back to his cousin, who originally gave it to him. 04/10/06 Tr. at 18. Although he took it from his cousin, knowing that his cousin expected him to sell it, defendant claims that he took some crack for himself and planned to give the rest of it back to his cousin because he (defendant) had a job and didn't need to sell the drugs. Id. The evidence in the record shows that defendant acknowledged possessing almost 15 grams of crack cocaine at the time of his arrest, which, pursuant to the government's plea proffer that was submitted with the plea letter that defendant had signed, is an amount that it is inconsistent with personal use. Id. Since defendant's admission, which was made under oath at the plea hearing, shows that he intended to transfer the drugs to another person, the Court must consider it when deciding this claim. See Blackledge, supra, 431 U.S. at 73-74. Moreover, by entering into a plea agreement with the government, defendant did not challenge the government's proffer regarding the weight of the drugs, the inference of an intent to distribute that the weight carries, and he waived his right to have a jury hear evidence and decide this issue. Accordingly, his claim for relief should be summarily denied.

15

sentencing guidelines.

Plea counsel did not render deficient performance when he did not challenge the indictment in this case because he did not have a basis to do so.   Although defendant raises this claim, he does not state a basis for such a challenge.   According to plea counsel, it is his practice to review the discovery, among other things, in order to determine what, if any, motions to file on behalf of a client.   See Exhibit One, supra, at ¶ 7.   In this case, plea counsel received and reviewed the discovery in this case and determined, in his sound professional judgment, that there was no basis to challenge the sufficiency of the indictment in this case.   In order to determine whether to file a motion in a case, counsel must exercise his best professional judgment when making that decision.   United States v. Brown, 663 F.2d 229, 231 (D.C. Cir. 1981).   Here, defendant has failed to allege what grounds, if any, would support a challenge to the sufficiency of the indictment.   Since he has failed to state the grounds for such a motion, defendant has failed to establish that counsel rendered deficient performance in this regard. Furthermore, defendant has also failed to show what, if any, prejudice he has suffered as a result of this alleged deficiency.   Consequently, he has failed to show that he received ineffective assistance of counsel, and this claim should be summarily denied.

Defendant's claim that counsel rendered deficient performance for failing to challenge the sentencing guidelines also lacks merit and should also be summarily denied.   Since the Court applied the gun bump and declined to apply the safety valve provisions of the guidelines, the government is assuming that defendant is complaining about how the Court applied these guideline provisions to his case.   If so, defendant's claim, for many reasons, lacks merit.   First, defendant's sentence was determined by the statutory mandatory-minimum sentence for the

offense he pled guilty to.  Although the low-end of the sentencing guidelines was three months lower than the 60-month statutory mandatory-minimum penalty for PWID 5 Grams or More of Cocaine, the Court was required to apply the statutory mandatory-minimum that applied in this case, which was within the applicable sentencing guideline range.

Second, although defendant sought to have the sentencing guidelines apply in this case when he attempted to rely on the "safety valve" provision in order to receive a sentence below the 60-month statutory minimum sentence, he was not entitled to relief pursuant to this provision as this Court correctly concluded at defendant's sentencing hearing.  06/28/06  Tr. at 20. Moreover, defendant still has not provided this Court with any information showing that he was entitled to relief pursuant to that provision.

Third, the Court determined that the gun bump applied in this case once it found that defendant possessed the gun that was recovered at the time of his arrest.  In its decision, the Court relied facts contained in the police reports, which established that the gun was found underneath the mattress that defendant was laying on when the police found him and his girlfriend in the bedroom.  Id.  Moreover, the gun was found underneath the mattress on the same side of the bed that defendant was laying on.  Id.  Therefore, the Court found that these facts established, by a preponderance of the evidence, that the gun was "either present or possessed or both within the meaning of the sentencing guideline."  Id.  Although defendant presented a written statement from his girlfriend, Ms. Barron, in order to challenge the application of the gun bump, the Court stated that it read her statement and did not find her statement to be credible.  Id. at 23.  Therefore, the application of the gun bump was justified in this case because there were facts in the record upon which the Court could rely when it ruled on this issue.

17

Furthermore, defendant has failed to show that he was prejudiced by the Court's application of the gun bump in this case.   Although the application of the gun bump placed defendant's sentence within a sentencing range of 57-71 months of imprisonment, the offense to which he pled guilty had a statutory mandatory-minimum of 60 months, which is the sentence that the Court ultimately ordered in this case.   Therefore, defendant's sentence was determined by the applicable statute, not the sentencing guidelines.   Thus, defendant has failed to show that he was prejudiced by the Court's application of the guidelines when it applied the gun bump in this case.   Consequently, he failed to establish that he received ineffective assistance of counsel in this regard, and his claim should be summarily denied.[6]

---

[6]   Defendant's claim that the Court misapplied the guidelines in this case should be summarily denied as well.  See Defendant's Motion at 9.  As previously argued by the government, defendant failed to present information showing that he was entitled to relief pursuant to the safety valve provision of the sentencing guidelines; thus, the Court correctly denied his request for sentencing under this provision.  Furthermore, defendant's sentence, which was ultimately determined by statute, was not affected by the Court's correct application of the gun bump provision of the sentencing guidelines to this case.  Therefore, this claim of error should be summarily denied.

## **CONCLUSION**

Wherefore, based on the foregoing, defendant's motion should be summarily denied.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

ROBERT D. OKUN
Chief, Special Proceedings Division
Assistant United States Attorney


_____/s/_____
TRICIA D. FRANCIS
Assistant United States Attorney
Room 10-447
555 4th Street, N.W.
Washington, D.C. 20530
202-353-9870



## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing motion has been served by mail upon pro se defendant, Ralph Price, Registration Number 28073-016, F.C.I. Cumberland, P.O. Box 1000, Cumberland, MD 21501-1000, on this _ 9th day of November, 2007.


_____/s/_____
TRICIA D. FRANCIS
Assistant United States Attorney

19