UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | Case No. 05-195 (JR) |
| : | |
| v. : | |
| : | |
| **RALPH PRICE** : | |

### AFFIDAVIT OF JONATHAN JEFFRESS, ESQ.

1. I received my Juris Doctor degree from the University of Virginia School of Law in 1998, and I am licensed to practice law in the Commonwealth of Virginia and in the District of Columbia. When I completed my law degree, I worked as a Judicial Law Clerk for the Honorable Thomas F. Hogan, in the U.S. District Court for the District of Columbia. Following my clerkship, I worked as an associate with the law firm of Williams and Connolly between 2001 and 2004. In 2004, I began working as an Assistant Public Defender with the Office of the Federal Public Defender for the District of Columbia. As an Assistant Federal Public Defender, I have represented over 100 clients in criminal cases in the U.S. District Court for the District of Columbia. I have handled cases involving gun offenses, drug offenses, fraud, and cases involving threats against the President.

2. I entered my appearance in this case on May 24, 2005 in order to represent Mr. Price in this matter. In the early stages of this case, Mr. Price was originally placed in the Heightened Supervision Program; however, he was later removed from the program and held without bond. Shortly after Mr. Price was held without bond, I moved to have this Court review Mr. Price's bond conditions, and successfully argued that he be placed in a halfway house. However, Mr. Price's bond was later revoked, and he was held without bond at a later date. During these

periods of time, I was able to speak with Mr. Price about this case, so that we could communicate with each other regarding how he wanted to proceed in this case.

3. During the time that I represented Mr. Price, I obtained discovery from the government, reviewed the indictment, and reviewed Mr. Price's criminal history, so that I could be in a position to start investigating this case and discuss his options of either going to trial or entering a disposition in this case. I also provided Mr. Price with a copy of the discovery materials so that he could review them as well. Early on, Mr. Price indicated to me that he wanted to explore the possibility of a disposition in this case, and that he wanted me to negotiate the best possible terms for him. At this time, I was aware that Mr. Price had a drug problem; therefore, I sought to obtain a plea offer for him that would make him eligible to participate in the 500-hour drug program that was being offered by the Federal Bureau of Prisons. I was aware that there was a possibility that Mr. Price would have to serve a 60-month mandatory minimum sentence in this case if he did enter a plea of guilty in this case, and I conveyed this information to him. In order to give him the full picture of what type of time he would be facing if he proceeded to trial and was found guilty on all of the charges, I also told him that, at the minimum, he would have to serve a 120-month mandatory-minimum sentence, due to the mandatory-minimum sentences that applied to the cocaine and gun charges. Understandably, Mr. Price did not want to serve a 60-month mandatory-minimum sentence in this case; therefore, he asked that I negotiate the best possible terms for him.

4. I spoke with the prosecutor who was assigned to the case at that time, and obtained a plea offer for Mr. Price. The terms of the offer were that if Mr. Price pled guilty to PWID Cocaine (which involved five grams or more of cocaine), the government would dismiss the

remaining charges at the time of sentencing, and they would remove any reference of the gun that was seized at the time of Mr. Price's arrest from the factual proffer. When I conveyed this offer to Mr. Price, he asked if I could make a counter-offer to the government, where he would plead guilty to PWID PCP instead. I understood from Mr. Price that he wanted to avoid the mandatory-minimum sentence that came with the PWID Cocaine charge; therefore, I made that counter-offer to the government. At this time, a new prosecutor had been assigned to the case, and he conveyed to me that the government was not going to accept our counter-offer. Also, the new prosecutor told me that the government was not going to make a plea offer which would involve omitting references about the gun from its plea proffer. In order to assist Mr. Price, I successfully negotiated that I be allowed to allocute for the application of the safety valve provisions of the guidelines at the time of sentencing, as well as to argue that Mr. Price did not possess the gun that was recovered at the time of his arrest. The government agreed to these terms, and I conveyed them to Mr. Price. Although Mr. Price was hoping that he would not have to plead guilty to an offense that carried a mandatory-minimum sentence, he carefully considered the plea offer and told me that he wanted to accept it.

5. When I discussed the plea offer with Mr. Price, there was sufficient time for us to review the terms, to discuss his concerns, and to convey our acceptance to the government. Mr. Price did not express to me, at any time, that he wanted to reject the government's offer and proceed to trial. He also understood that although I was going to argue for the application of the safety valve provision, and that we were going to litigate the issue regarding the gun before the Court at the time of sentencing, there was no guarantee that he would not have to serve a mandatory-minimum sentence of 60 months. I also conveyed to him that there was no guarantee

that he would be able to enter into the 500-hour drug treatment program once he started serving his sentence. In response, Mr. Price indicated to me that he understood this, and that he wanted to accept the government's plea offer. Although Mr. Price had initially planned to present the testimony of his girlfriend, Wilinda Barron, at the sentencing hearing regarding the gun issue, he ultimately decided not to present her testimony. However, we presented a written statement from her. As for the application of the safety valve provision, I argued all of the points that I could regarding his eligibility for this provision of the guidelines, so that he could possibly serve a sentence that was less than the mandatory-minimum sentence. However, the Court found that we had not met our burden of showing his eligibility for the safety valve provision, and the Court ruled against us on the issue of whether defendant possessed the gun that was recovered at the time of his arrest.

6. After Mr. Price had been sentenced, I discussed the case with him and told him that I would note an appeal on his behalf, which I did do. The appellate division of the Federal Public Defender's office reviewed Mr. Price's case and found that there were no appealable issues present in this case. I spoke with Mr. Price about this finding, and he agreed that the appeal in this case should be withdrawn. Consequently, a motion to dismiss the appeal was filed and ultimately granted by the Court of Appeals.

7. Although Mr. Price is claiming that I should have challenged the Grand Jury process, the indictment, the way that the Court applied the sentencing guidelines in this case, and that I should have raised a Brisbane challenge to the PWID Cocaine count in the indictment, I respectfully disagree with his claims. It is my practice to review the discovery materials in a case, review the indictment, and have discussions with my client about the facts of a case in order

4

to determine what, if any motions, should be filed. In this case, I received discovery, which included the DEA-7 for the drugs that were recovered, early in this case. I also shared these materials with Mr. Price. Upon reviewing these materials and discussing the case with Mr. Price, I determined, based on my sound professional judgment, that there was no basis for me to challenge the grand jury process, the indictment, or the fact that he possessed crack cocaine with the intent to distribute, particularly because the DEA-7 indicated that the cocaine recovered from defendant consisted of a white rock substance containing cocaine base.

8. Although Mr. Price is claiming that I coerced him into accepting the government's plea offer, I respectfully disagree with this claim as well. Mr. Price and I had sufficient time to discuss his decision to plead guilty, or to go to trial in this case. I told him that the choice of entering a guilty plea or going to trial was his choice to make. Mr. Price did not tell me that he wanted to reject the government's plea offer. Had he told me that he wanted to reject the government's offer and proceed to trial, I would have conveyed this to the government and prepared for trial in this matter.

I hereby declare under the penalty of perjury that the above is true and correct the best of my knowledge.

_____    ___11/9/07_____
Jonathan Jeffress, Esq.                Date